13.3935 13.4075 Virginia LeFeve v. James Ferguson Arguments not to exceed 15 minutes per side Mr. Shuler for the Appellant's Cross-Appellees. While you were approaching the podium, I heard clicking. Judge Cook, you're still able to hear? I am. Oh, good. I'm sorry. We heard clicking that almost sounded like you had been cut off. Thank you. No, thank you, Judge. My name is Gordon Shuler, appearing on behalf of the Appellant and Cross-Appellee James Ferguson. He is the only remaining defendant in this case. It started out with two counties and one city and two police officers and a coroner and many other defendants being sued for constitutional deprivation claims. And it's one of those cases where a person, the plaintiff spent 22 years in prison. There's no doubt about how we get here, but that makes the case somewhat difficult because we have to look back at the conduct of the parties on some of these claims in 1988 through 1990. The death of Mr. LeFeve occurred in 1988. The trial didn't happen until 1990. There are basically two issues left before the court. One is on our appeal, and that is that summary judgment was granted to all of the other defendants. With regard to Mr. Ferguson, who was the chief toxicologist for Franklin County, even though these events occurred in Licking County, they didn't have a toxicologist, so he did the work. His claim of qualified immunity on his motion for summary judgment relative to a claim of fabrication of evidence was denied. One of the structural problems I think that we have had to a certain extent with these claims is that, and this is no criticism of my worthy counsel here, I have more than one case with these gentlemen and they do a great job. They make life difficult for me when I'm on the other side. But in their arguments, in the complaint and in the motions for summary judgment, they tended to make arguments related to a Brady claim for failure to disclose exculpatory evidence with a fabrication of evidence claim, which are two separate concepts. And my appeal, Mr. Ferguson's appeal, relates to fabrication of evidence. Their appeal relates to a Brady failure to disclose exculpatory evidence. And they sort of get mixed in these briefs. It's sometimes hard to follow exactly which one we're dealing with. But the claim against Mr. Ferguson has to do with an assertion now that he fabricated evidence with respect to the method of administration of arsenic into the decedent's body. His reports indicate that he believes that it was administered rectally. He testified to that at trial. And during his deposition, it is the position of the appellee on that issue that he then said, I don't know how the arsenic entered his body. Counsel, is Mr. Ferguson entitled to absolute immunity for that trial testimony? Yes, on the trial testimony itself. Right. The claim here, I'm sorry, did I interrupt? No, thank you. Okay. The claim here is, and we know there's a difference between pretrial conduct on the part of a police officer, or in this case, a forensic analysis, as opposed to testimony at trial. The claim is that he fabricated something in advance of trial. And yet, his testimony in trial is perfectly consistent with all of his reports in terms of the scientific work that he did. Mr. Ferguson is in his 60s. Is that based on his subsequent affidavit? A deposition that was taken, and the point I was going to make here is that Mr. Ferguson is in his 60s now. He suffers from two forms of cancer. One of his eyes has been removed. We have trouble getting through a lot of hours of deposition. And so what we're dealing with here is what the plaintiff claims is a discrepancy between his testimony at trial and his testimony in a deposition 22 years later. We believe, and we have presented to the court, the discussion that at trial, and in his reports, he testified that Mr. Lefebvre suffered from both chronic and acute arsenic poisoning, and that the acute arsenic poisoning was administered rectally. The prosecutor never asked him how the chronic arsenic poisoning was administered because he didn't know. And that's similar to the testimony he gave in this deposition. And yet, and in the trial court... I'm struggling. I think that everyone agrees that trial testimony has absolute immunity. I'm struggling with understanding why, though, it can't be evidence of fabrication pretrial. I think that's their theory. I'm sure they'll inform us. I agree. So explain to us why that doesn't, because this judge thought there was a sufficient dispute of fact as to whether he manufactured evidence without regard to, and not a prosecution for what he said at trial, but the fact that it evidences fabrication. I understand, and that's one of the problems here, and that is, what is the fabrication based upon his 22-year-later testimony? In the trial, and all the evidence in the criminal trial 22 years ago, he submitted written reports that the defense had. Everything was provided to the defendant, and what he said in his report was that the acute arsenic poisoning may have been administered rectally. Actually, his words, may have been. He never said how the chronic arsenic poisoning was accomplished, because he didn't know. They actually found, in this gentleman's lower colon, arsenic. He found levels of arsenic in the liver, heart, and kidneys that he believed came from the rectally administered poisoning. But then he also found arsenic poisoning in the fingernails and hair, which would indicate that there was arsenic poisoning at least four days preceding his death. That would be the chronic arsenic poisoning. So, when he was then asked in deposition, isn't it true that you don't know how the arsenic poisoning was administered? He said, I don't know. He wasn't asked, is it true that you don't know how the acute arsenic poisoning was administered, or the chronic arsenic poisoning? The question was just arsenic. In the trial, even the defense lawyer said to him, now your theory is, however, that chronic administration of arsenic, is this also inserted in the rectum? Answer, I have no idea. He didn't have any idea about that back then or now. And there's really no explanation other than confusion relative to the questions. The other part that's confusing about these questions... I'm struggling with when confusion rises to the level of what may be a disputed fact. That's exactly... I know there's argument in your briefing that this was not covered by the complaint, but I'm looking at the complaint and it gives examples as opposed to limiting... Well, it only gives one example. Yeah, but it calls it an example, and in paragraph 52 it says, other supposedly scientific testing theories and conclusions that he and defendant procured or devised. So I think that's a pretty clear allegation that you made something up. Yes, but all of the factual allegations anywhere in this complaint relate to the amitriptyline poisoning. But they are premised by the statement, one example of this. I understand that, but if you read... This is no displeading. I understand that part, but if you read the complaint, there is nothing in the complaint about anything but amitriptyline poisoning, and amitriptyline poisoning is the cause of death. So that these other... they found strychnine, they found sulfate or sulfide poisoning, they found arsenic poisoning, none of those three were the cause of death. Amitriptyline was, and that was the real subject of the complaint. I know that we don't have much time and there's a lot of facts in this case, but I would call the court's attention to a decision from this court that was just decided March 27th of this year. D'Ambrosio v. Marino, 13-3118. And even in that case, although that's a Brady case, not a fabrication case... Well, it was really a Giglio case here, it's an impeachment issue they're complaining about, but your issue is the fabrication. That's exactly right, but in D'Ambrosio, where it has application, they say he is claiming that information was not disclosed. But in his complaint, he never told us what that is. How do we know, how can we test whether it's a constitutional deprivation if we don't even know what was supposedly not disclosed? The same thing is true here. In the complaint, there's no indication as to what was possibly fabricated. If you accept their theory of the case, all of Mr. Ferguson's testing, testimony, everything else he did at trial with regard to arsenic was fabricated. They have no other inconsistencies in the deposition. Amitriptyline poisoning was the cause of death, that's the thing they were really complaining about. I mean, they had an expert witness, we deposed him, went all through the amitriptyline poisoning and what Mr. Ferguson's opinions were. That's what this case was really about. When we filed our motions for summary judgment, and I filed on behalf of Mr. Ferguson, I hadn't seen theirs, I didn't even know. I had no way of knowing that arsenic was even an issue. The questions at the deposition were, well, then you must have lied, you must have fabricated that. Nothing was ever asked like that. These very basic questions were, you didn't know. There's another minor point about these questions. The question has to do with, how did the arsenic get into Mr. Lefebvre's body? It would not kill him if it were inserted into his rectum and never went anyplace else. So when the question is asked, how did the arsenic get into his body? I believe that the question had to do with, how did it get into his bloodstream, into his heart, into his liver, into his kidneys? Or into his hair or his fingernails? But those questions were not asked. And so, was Mr. Ferguson being asked, in his deposition, was there, where did the arsenic poisoning come from? That would be in his body. I don't know. I don't have an opinion on that. Because his own testimony was, it had to have been administered in a way, in addition to the rectally administered poisoning. There are many other issues in this case. I can't possibly get this across appeal in 15 minutes. But there are jurisdictional issues with regard to the cross appeal. I would invite the Court's attention to the amicus brief. I think that they were co-counsel representing the coroner in this case. Dr. Riker, I'm sorry. Dr. Riker was the coroner in Licking County. And I think they've done an excellent job of explaining to the Court why there's no jurisdiction over the cross appeal at all. It shouldn't even really be here. We know how these interlocutory appeals are made on behalf of public officials who claim qualified immunity. And that's my appeal. This cross appeal was just made, no just reason for delay. We think this issue should go up. There are many other parties, many other issues left in the case. And the cross appeal should not have been permitted. I know I'm out of time. Thank you. Good morning to the panel members, Mr. Shuler, and may it please the Court. Your Honor, I'm Rex Elliott and I represent Ginny Lefevre. Ginny Lefevre was convicted in 1990 of the 1988 death of her husband, Bill Lefevre, and then spent 22 years in prison. I'd like to start by distinguishing between the two categories of evidence at issue on this appeal. There is the fabrication of evidence issue, Judge Stranch, that you mentioned, and then there's the Brady material. And let me first address the fabrication evidence. Fabrication evidence in this case is that Mr. Ferguson fabricated in a toxicology report prepared prior to trial and what it says is that he had reached the conclusion that arsenic had been administered rectally to Mr. Lefevre. Now, that is critically important because... Did he say may have? He did say may have. He said that he had reached the conclusion that it may have been administered. And then at trial, he made it clear what he meant in that report, and that is that he had a scientific expert opinion to a reasonable degree of scientific probability that arsenic was administered rectally to Mr. Lefevre. But he's absolutely immune for that testimony. He is immune. You're absolutely right, Your Honor. Help articulate a little more specifically your theory as to how you've got the fabrication without really anything on the testimony because you can't get him for the testimony. You're 100% right, and we are not arguing that. We are arguing that the pretrial toxicology report that indicated that he had reached a conclusion that arsenic had been administered rectally conflicts diametrically with his deposition testimony in the case where I asked him point blank, did you have any scientific basis for your conclusion that arsenic was administered rectally? And he said no. I said, did you have any scientific basis back in 1988 and 1990? He said no. I said, did you disclose that information to the prosecutor? He said no. There was absolutely no manner in which to misunderstand the questions that I asked him. I asked him point blank. Yes, Your Honor. Before we draw a line here, it's obvious that the testimonial evidence given is absolutely unusual. The question I have is why isn't the making up notes and calculations and so on purely for the purpose of testifying also a part of the testimonial immunity? And I'm so sorry to ask you this, but we're having a little telephone connection problem. Would you give us just a moment to reconnect? Yeah, I'm sorry. I wanted Judge Strange to go ahead. Yeah, go ahead and disconnect, and we're going to call you right back. Thank you. Give us just a minute. I think Judge Cook may have some questions. She did not miss any of the argument. She could hear us, but she's been trying to ask a question. And for some reason, we're not hearing her now. But she has not missed any of the argument. Yes, thank you. I'm back. Now we can hear you, Judge Cook. Did you hear Judge Merritt's question? I'm able to hear. I was unable to question, and I tried several times. So thank you for the accommodation. If you'll answer, and then we will give Judge Cook an opportunity to ask. And go back if we need to. Fair enough, Your Honor. Let me address Judge Merritt's question then on the issue of really what is absolute immunity. The issue, as this court and other courts have said many, many times, is that certainly the trial testimony in the criminal case is absolutely immune. No question about that. But you can't reach back to pretrial acts and immunize those as well. Even if you're making notes and calculations and reminders about what you're going to testify to, that's not part of the immunity? Well, Your Honor, I would certainly suggest that here what we have is an official toxicology report that was passed around to everybody that indicated that he had reached this conclusion. I would say that if you are talking about notes that are going over with the prosecutor in preparation for trial testimony and things of that nature, that that might come within those cases that talk about the conspiracy to commit perjury, which could be absolutely immune. But that's a very narrow set of cases. So I would say that anything that is pretrial outside of that narrow area certainly is not absolutely immune. And, again, here we have an official toxicology report. Do you have any expert information in the record that would indicate that that toxicology report was falsified? In terms of its conclusion? Yes. We did have expert testimony that our experts did not believe that arsenic was administered rectally. And this is a critical item of evidence in this case because prior to trial, the overwhelming evidence indicated that Bill Lefevre was suicidal. So the state had to find a way to get these substances into his body. The arsenic testimony that it was administered rectally was critical. In fact, this court in the 2000 decision denying habeas corpus looked at the arsenic testimony and indicated that it's impossible to believe that there was a suicide here because arsenic was administered rectally. We now find out from Mr. Ferguson, by the way we've heard about the allegations in the complaint, the testimony of Mr. Ferguson happened after the complaint was filed. Now, I don't think we have a duty every time we learn something in discovery to go back and amend the complaint. But Mr. Ferguson disclosed for the first time in this case that he had never had any scientific basis for this conclusion that he wrote in his toxicology report. I'd also indicate to the court that I do think that this,  that we should not be addressing here on an interlocutory appeal over qualified immunity. It's not a pure question of law. Even though I would submit that the district court was correct, there is a clear question of fact here. I'd pause for a moment. I think Judge Cook had a question I'm happy to answer. My question concerned the alignment between Ferguson's testimony about the possibility of the rectal administration that was consistent with his supplemental toxology report. Yes, I'm not sure exactly what you're referring to, but the chronology of events went as follows. Mr. Ferguson created a toxicology report that indicated that he had reached a conclusion that arsenic may have been administered rectally to Mr. Lefevre. He then testified at trial, which Judge Stranch, I think you're right, I think we can look at that trial testimony, even though we're not suing him on that, to have a better understanding of what he meant in that toxicology report, that he had a scientific opinion to a reasonable degree of probability that arsenic was administered rectally. And then in his deposition in the civil case, he testified unequivocally that he never had any scientific basis for that conclusion. So that is the chronology of events. Could you remind me of your expert's name that had indicated that the toxicology report was falsified? I'm not sure that that is in the record, Your Honor, because we had not gotten to the expert testimony, the expert discovery, until after the summary judgment was briefed. But we certainly had an expert lined up that was going to say that arsenic was not administered rectally. And that's not been placed in the record? It hasn't. That's right, because we had worked on a schedule in the trial court where we would deal with the liability issues first, and then we would get to expert discovery because there were so many parties in the case, and we were all cost-conscious about how much that had cost. But we certainly have that expert opinion that that was not administered rectally. If I could briefly then just go to our cross-appeal. What the district court did here is the district court, I believe, appropriately said that it was clearly established that you can't fabricate evidence as of 1990. But the district court drew a distinction between the Brady material that we had referred to, which included information that Mr. Ferguson had lied in hundreds of criminal cases before Jenny Lefevre's trial about his qualifications to testify as an expert witness. I would submit to Your Honor that it was clearly established in 1990 that a forensic examiner who's an expert in the case would understand that if he had lied about his qualifications in hundreds of previous cases, that that would be material that he needed to disclose to the prosecutor to give to the defendant in order to have a constitutional right to a fair trial. Additionally, because it's impeachment. Let me step back from that. Why would we take that part of the case now in light of Dr. Raker's position and the fact that even your brief concedes that it's likely to come up a second time? I'm not sure it is going to come up a second time, Your Honor. But if it can, why should we take it now? Because the trial in this case ought to involve all the issues, all the claims against Mr. Ferguson, as opposed to the possibility there might be a trial down the road or an appeal down the road in the second trial. There's a little bit of a problem with that, though, because that's true in any case. But we only have interlocutory jurisdiction for specific things. I think that's right, Your Honor, and that's why we certainly argued at the time that the most efficient way to go about this was to consolidate all the issues as it relates to Mr. Ferguson, try those issues, and there may not be a second appeal or a second trial at all. I think we all concede in this case that it is truly Mr. Ferguson's conduct that's at issue here. He fabricated the evidence. He was the state's key witness in the case. The trial judge that convicted Ginny Lefevre and then released her in 2010 made it crystal clear. He said that Ferguson was the linchpin to the state's case, and he was, because he's the only one that could establish that these substances came in some other way other than by mouth. When he was proven to be a liar, as the trial judge pointed out, the entire case fell apart. So I would submit, Your Honor, that the meat and potatoes of this case is James Ferguson, and there may never be another appeal at all. The way this case ought to be handled is it ought to go interlocutory appeal denied or go back and be tried as a whole. That's your view of what would be the proper way to deal with it. Yes, Your Honor, that is my view. I think we should try all the issues against Mr. Ferguson as a whole. And if I could briefly, Your Honor— So reverse on the Giglio issue. I would absolutely— You want— Yes. —that you try everything together. Yes, and it's not just Giglio, Your Honor. It truly is Muldown and Gregory and all the cases that we've cited that indicate that this was clearly established as of 1990, and in the Elkins case, maybe as early as 1964. And if I can just briefly address the court's decision in D'Ambrosio on March 27th, the D'Ambrosio case is markedly different than this case and I actually think is consistent with Muldown and Gregory. In D'Ambrosio, what we had is a coroner who, at the time of the autopsy, wrote notes about the body not coming to the coroner with shoes. Those notes were not turned over to the prosecutor. Additionally, in D'Ambrosio, the allegations were that the coroner had a duty to disclose that directly to the defense, and I think we can all agree that's not a forensic investigator's duty. But in D'Ambrosio, when the coroner made those notes in the autopsy, the coroner had no way of knowing that that was Brady material because it was later that the key witness in this case indicated that they had seen the victim matter around the time of the murder walking down the road. Those notes would have been used to impeach that witness because the body wasn't wearing shoes. In our case, the Brady material is crystal clear. It is lying in hundreds of prior criminal cases as an expert witness and also before trial drafting a novel with sensational claims about the murder indicating bias and a determination to convict at all costs. If that information had been produced to the prosecutor and then on to the defense counsel, it would have exposed Mr. Ferguson as a liar and a fraud, and Ginny Lefevre would not have been convicted in 1990. She wouldn't have lost 22 years of her life. So we are asking the court to affirm the trial court's decision on Mr. Ferguson's fabrication claim, reverse on the Brady material claim so that all those issues can be tried at the same time in the trial court. Unless there are any other questions, that would conclude my argument. Thank you, Your Honors. I did not reserve any time because of the appeal and cross-appeal. There was no way to get to it all anyway. Well, that works out. I'm sorry. I thought he had reserved some time. Thank you both for your arguments. Thank you, Your Honor. Judge Cook, did you have any questions that we did not get to? No, thank you, Judge Stranch. Hear me? Yes, we can hear you. Thank you.